**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Astrid Ongstad, individually and as trustee of the Ongstad Family Trust, and on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>Piper Jaffray & Co.,<br><br>　　　　　Defendant. | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br><br>Case No. 1:05-cv-108 |

　　　　Before the Court is the Plaintiffs' Motion to Remand the above-entitled action to the District Court for the State of North Dakota, South Central Judicial District filed on November 17, 2005. The basis for remand is lack of jurisdiction under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 (CAFA). The Defendants have filed a motion opposing remand. For the reasons outlined below, the Plaintiffs' Motion to Remand is granted.

**I.　BACKGROUND**

　　　　The plaintiff, Astrid Ongstad, is a resident of Bismarck, North Dakota. See Complaint, ¶ 5. The plaintiff, the Ongstad Family Trust, is a North Dakota trust established by Astrid's late husband Walter Ongstad for her benefit. Id. ¶ 4. The defendant, Piper Jaffray & Co (Piper Jaffray), is a securities broker-dealer and investment banking firm incorporated in Delaware with its principal place of business in Minneapolis, Minnesota. Piper Jaffray maintains offices in Bismarck, Fargo, and Grand Forks, North Dakota. Id. ¶ 2.

　　　　Astrid Ongstad, individually, and the Ongstad Family Trust, maintained brokerage accounts with Piper Jaffray. See Complaint, ¶ 6. It is alleged that on at least three occasions in 2004, Piper

Jaffray traded securities held by Astrid Ongstad and the Ongstad Family Trust without authorization which resulted in financial loss.  Id. ¶¶ 22-27.

On or about September 29, 2005, Astrid Ongstad, individually, and as trustee for the Ongstad Family Trust, on behalf of themselves and all others similarly situated, served Piper Jaffray[1] with a summons and complaint asserting numerous violations of North Dakota state law, to include claims for conversion, breach of contract, breach of fiduciary duty, and negligent supervision.  See Complaint, ¶¶ 7-10; Docket No. 1.  The Plaintiffs "seek to recover for damages incurred as a result of a pattern and practice of unauthorized trading in brokerage accounts managed by Piper Jaffray in its Fargo, Grand Forks, and Bismarck, North Dakota offices."  See Complaint, ¶ 1.

The case was subsequently filed in the District Court for the State of North Dakota, South Central Judicial District, Burleigh County.  Thereafter, on October 19, 2005, Piper Jaffray filed a Notice of Removal to the United States District Court for the District of North Dakota.  See Docket No. 1.  In the Notice of Removal, Piper Jaffray invokes diversity jurisdiction as amended by CAFA.  See Defendant's Notice of Removal, ¶ 3.

On November 17, 2005, the Plaintiffs filed the present motion to remand based upon lack of subject matter jurisdiction under 28 U.S.C. § 1332.  Specifically, the Plaintiffs contend that Piper Jaffray is unable to demonstrate the requisite number of class members and amount in controversy. See 28 U.S.C. §§ 1332(d)(2) and (d)(5)(B).

---

[1] Piper Jaffray was served by way of its statutory agent for service of process, the North Dakota Securities Commission.  See Docket No. 1.

2

## II. LEGAL ANALYSIS

### A. BURDEN OF PROOF UNDER CAFA

Following removal of a case to federal court, a plaintiff can seek remand of the action back to state court. See 28 U.S.C. 1447(c). Removal statutes are strictly construed in favor of state court jurisdiction and federal district courts must resolve all doubts concerning removal in favor of remand. In re Business Men's Assur. Co. of America, 992 F.2d 181,183 (8th Cir. 1993). The removing party bears the burden of showing that removal was proper. Id; see also Green v. Ameritrade, Inc., 279 F.3d 590, 595 (8th Cir. 2002) (citing In re Business Men's Assurance Co. of Am., 992 F.2d 181, 183) (The party opposing remand has the burden of establishing federal subject-matter jurisdiction.). Although CAFA does not address the issue, courts are currently split on whether the new Class Action Fairness Act of 2005 shifts that burden of proof to the party seeking remand.

Several courts have held that CAFA shifts the burden to the party seeking remand. See Harvey v. Blockbuster, Inc., 384 F. Supp.2d 749, 752 (D. N.J. 2005); In re Textainer Partnership Sec. Litigation, No. C 05-0969 MMC, 2005 WL 1791559, *3 (N.D. Cal. Jul. 27, 2005); Waitt v. Merck & Co., Inc., No. C05-0759L, 2005 WL 1799740, *2 (W.D. Wash. Jul. 27, 2005); Yeroushalmi v. Blockbuster, Inc., No. CV 05-225-AHM(RCX), 2005 WL 2083008, *3 (C.D. Cal. Jul. 11, 2005); Berry v. Am. Express Pub., Corp., 381 F. Supp.2d 1118, 1122-23 (C.D. Cal. 2005). In doing so, most point to the legislative history of CAFA. An oft-quoted Senate Judiciary Committee report reads, in relevant part, as follows: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)."

S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). Under such a framework, the plaintiff would bear the burden of establishing the lack of federal jurisdiction.

Conversely, other courts have held that CAFA does nothing to alter the traditional rule of law that the party opposing remand bears the burden of establishing federal jurisdiction. See Plummer v. Farmers Group, Inc., 388 F. Supp.2d 1310, 1317-18 (E.D. Okla. 2005); Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, *2 (E.D. Mo. Sep. 14, 2005); Schwartz v. Comcast, Corp., No. Civ.A. 05-2340, 2005 WL 1799414, *4 (E.D. Pa. Jul. 28, 2005); In re Expedia Hotel Taxes and Fees Litigation, 377 F. Supp.2d 904, 905 (W.D. Wash. 2005); Sneddon v. Hotwire, Inc., No. C 05-0951 SI, C 05-0952 SI, C 05-0953 SI, 2005 WL 1593593, *1 (N.D. Cal. Jun. 29, 2005). Most notably, the Seventh Circuit has so concluded. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005).

The United States Supreme Court and the Eighth Circuit Court of Appeals have not yet addressed this issue. Despite the absence of binding precedent, Piper Jaffray urges the Court to adopt the burden-shifting approach requiring the Plaintiffs to establish federal court jurisdiction. Piper Jaffray points to the legislative history of CAFA, as well as the trend of bringing securities-related litigation within federal jurisdiction.

As it stands, the removing party bears the burden of establishing federal jurisdiction. See In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993). The express language of CAFA does nothing to disrupt that maxim, nor should its legislative history. A recent decision out of the Eastern District of Missouri accurately summarizes the reason that is so.

> [A]lthough the CAFA is silent about the burden of proof in cases removed under the Act, a Committee Report, S. Rep. No. 109-14, at 44 (2005), contemplates the shifting of the burden to the plaintiff seeking remand. See Berry v. American Express Pub., Corp., 2005 WL 1941151, *3 (C.D.Cal. June 15, 2005).

> At the time of the enactment of the CAFA, Congress was presumed to be aware of the well settled case law regarding the burden of proof in removed actions. Contract Freighters, Inc. v. Secretary of U.S. Dept. of Transp., 260 F.3d 858, 861 (8th Cir. 2001) (Congress is presumed to know the legal background in which it is legislating). A court may resort to legislative history to interpret a statute when it contains an ambiguity. Absent some ambiguity in the statute, there is no occasion to look to legislative history. Neosho R-V School Dist. v. Clark, 315 F.3d 1022, 1032 (8th Cir. 2003). The omission of a burden of proof standard in the CAFA does not create an ambiguity inviting courts to scour its legislative history to decide the point. By failing to specifically address the burden of proof in the Act, especially in light of discussing the issue in a Committee Report, Congress is deemed to have not intended to change the settled case law on that issue. Had Congress wished to change which party bears the burden of proof in a removal action under the CAFA it could have explicitly done so.

Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, *1-2 (E.D. Mo. Sep. 14, 2005). The Seventh Circuit also endorsed such an approach.

> Countrywide maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than a poll of legislators– less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

> We recognized that a dozen or so district judges have treated this passage as equivalent to a statute and reassigned the risk of non-persuasion accordingly. See e.g., Berry v. American Express Publishing, Corp., 381 F. Supp.2d 1118 (C.D. Cal. 2005); Natale v. Pfizer, Inc., 379 F. Supp.2d 161 (D. Mass. 2005), affirmed on other grounds, 424 F.3d 43 (C.A. 1 (Mass) 2005). But naked legislative history has no legal effect, as the Supreme Court held in Pierce v. Underwood, 487 U.S. 552 (1988). A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the

> rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve. Cf. Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631 (2005); Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S.Ct. 2611, 2625-27 (2005).

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005).

This Court is persuaded by the holdings in Judy and Brill. The Court will decline Piper Jaffray's invitation to break from the well-established rule of law that the removing party bears the burden of establishing federal subject-matter jurisdiction. There is simply nothing in CAFA that contemplates such a change.

### B.     DIVERSITY JURISDICTION UNDER CAFA

Removal in this case was predicated upon 28 U.S.C. § 1332, as amended by CAFA, which provides as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–
>
>> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). This provision does not apply to a class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. §

1332(d)(5)(B).[2]  As discussed, Piper Jaffray bears the burden of establishing each jurisdictional element.  The parties agree that diversity exists among the parties.  However, the Plaintiffs maintain that remand is appropriate because Piper Jaffray cannot demonstrate the requisite amount in controversy of $5,000,000, or that the proposed class has at least 100 members.

As previously stated, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  Under CAFA, every class members' claim must be aggregated to determine whether the $5,000,000 threshold is satisfied.  See 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interests.").  The Plaintiffs' underlying complaint does not specify an exact amount of damages.  In such a case, the removing party must prove the amount in controversy by a preponderance of the evidence.  See James Neff Kramper Family Farm Partnership v. IBC, Inc., 393 F.3d 828, 831 (8th Cir. 2005); In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation, 346 F.3d 830, 834 (8th Cir. 2003) ("Where, as here, the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party, Minnesota Mutual, must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.").

To satisfy its burden, Piper Jaffray relies on the affidavit of Marc Peterson, a Regulatory Affairs Analyst with the company.  Peterson's duties include responding to regulatory exams and audits and creating customized database reports using Piper Jaffray's data warehouse.  See Affidavit

---

[2]CAFA authorizes the removal of class actions that are "commenced" on or after February 18, 2005.  Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, *2 (E.D. Mo. Sep. 14, 2005).  For purposes of CAFA, an action is "commenced" when it is filed in state court."  Id. (citing Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 806 (7th Cir. 2005).  It is clear from the record that this action was commenced after that date.

of Marc W. Peterson, ¶ 1. According to Peterson, as of October 5, 2005, Piper Jaffray's North Dakota offices (located in Bismarck, Fargo, and Grand Forks) had approximately 16,243 open accounts, held by approximately 11,333 clients, managing in excess of 1 billion dollars in assets. Id. ¶¶ 3-5. Peterson further attests that between October 1, 1999, and October 5, 2005, approximately 18,699 accounts were closed between the three North Dakota offices. Id. at ¶ 6.

Piper Jaffray contends that "[e]ven if the unauthorized trading Plaintiffs allege occurred only in a small percentage of these accounts and involved only a small percentage of the assets, Piper Jaffray's liability could easily exceed CAFA's amount in controversy minimum of $5,000,000." Defendant's Notice of Removal, ¶ 15. Piper Jaffray also asks the Court to consider the potential punitive damages and attorney's fees at issue.

It is well-established that punitive damages are included in determining the amount in controversy. Allison v. Security Ben. Life Ins. Co., 980 F.2d 1213, 1215 (8th Cir. 1992) (citing Bell v. Preferred Life Assur. Society, 320 U.S. 238, 240 (1943)). However, "when determining the amount in controversy, 'a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.'" Larkin v. Brown, 41 F.3d 387, 389 (8th Cir. 1994) (quoting Zahn v. Int'l Paper Co., 469 F.2d 1033, 1034 n.1 (2d. Cir. 1972)). Under North Dakota law, exemplary or punitive damages may be awarded "for the breach of an obligation not arising from contract, when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice." N.D. Cent. Code § 32-03.2-11(1). Such damages may not exceed two times the amount of compensatory damages, or $250,000, whichever is greater. N.D. Cent. Code § 32-03.2-11(4). The Eighth Circuit also permits the court to consider attorneys'

fees in determining the amount in controversy. See Capital Indemnity Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992).

Having carefully considered all of the evidence, the Court finds that Piper Jaffray has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. The complaint provides scant information regarding potential damages. The only reference to a specific amount of loss is in regard to an allegedly unauthorized transaction on behalf of the Ongstad Family Trust on January 27, 2004, wherein the trust incurred a capital loss of $14,702. See Complaint, ¶ 22. Two additional unauthorized transactions are detailed, but the complaint merely states that both the Ongstad Family Trust and Astrid Ongstad "incurr[ed] damages" as a result of those transactions. No further details are provided in the complaint.[3]

Piper Jaffray relies primarily on the facts and figures provided by Marc Peterson, namely that as of October 5, 2005, Piper Jaffray's North Dakota offices had approximately 16,243 open accounts, held by approximately 11,333 clients, managing in excess of 1 billion dollars in assets. See Affidavit of Marc W. Peterson, ¶¶ 3-5. Standing alone, there is little that can be drawn from such figures. The Court is simply asked to speculate as to the potential large dollar amounts at stake based on the total value of the assets held by Piper Jaffray. However, as the Plaintiffs correctly note, there is no inherent correlation between the total value of the assets and the amount of damages sustained as a result of unauthorized transactions. The proper measure of damages is the difference between the value of the unauthorized investment at the time it was sold or purchased and its current value. Neither party has provided the Court with a reliable method to determine, or even guesstimate, that amount.

---

[3] The Plaintiffs brief references two additional unauthorized transactions, but the respective loss amounts are only $200 and $375. See Plaintiffs' Motion to Remand, p. 5.

9

The Court is also unpersuaded by the potential for the recovery of punitive damages. First, the Plaintiffs erroneously included a request for punitive damages in their original complaint. See Complaint, ¶¶ 37 and 47. This practice is expressly prohibited under North Dakota law. See N.D. Cent. Code § 32-03.2-11(1) (Upon commencement of the action, the complaint may not seek exemplary damages.). The proper method for seeking an award punitive damages under North Dakota law is to file a motion to amend the complaint requesting such relief at a later date. The defendant is then given an opportunity to oppose the request. After considering the evidence, if the Court finds "that there is sufficient evidence to support a finding by the trier of fact that a preponderance of evidence proves oppression, fraud, or actual malice, the court shall grant the moving party permission to amend the pleading to claim exemplary damages." Id. The Court has made no such determination. As a result, the Plaintiffs' prayer for punitive damages carries little weight at this stage of the litigation.

Similarly, the Plaintiffs unsupported request for attorneys' fees is unavailing. The complaint makes a mere reference to attorneys' fees in the prayer for relief. See Complaint, ¶ 53. However, neither party has cited any statutory basis for such an award and the likelihood of such an award at this stage is speculative at best.

In summary, there is great uncertainty about the amount in controversy in this case. The Eighth Circuit demands that all doubts concerning federal court jurisdiction be resolved in favor of remand. See In re Business Men's Assur. Co. of America, 992 F.2d 181,183 (8th Cir. 1993). The Court will follow that rule of law and err on the side of remanding the action back to state court.

The Court finds that Piper Jaffray has not proven by a preponderance of the evidence that the amount in controversy will exceed the $5,000,000 threshold.[4]

### III.     CONCLUSION

The Court concludes that removal jurisdiction is lacking and that a remand to state court is appropriate. Accordingly, the Court **GRANTS** the Plaintiffs' Motion to Remand (Docket No. 6) and remands this action back to the District Court for the State of North Dakota, South Central Judicial District, Burleigh County. Piper Jaffray's Request for Oral Argument is **DENIED** as moot. (Docket No. 17).

**IT IS SO ORDERED.**

Dated this 4th day of January, 2006.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court

---

[4] The Court would add that there is also uncertainty about the class size requirement. By statute, the proposed class must have at least 100 members. 28 U.S.C. § 1332(d)(5)(B). As with the amount in controversy requirement, Piper Jaffray must demonstrate that the class size requirement has been met. The complaint states that "[t]he Named Plaintiffs are not aware of the exact number of Class Members, but estimates the number will be over seventy-five." See Complaint, ¶ 10. Piper Jaffray maintains that there will be at least 100 members due to the large number of client accounts among the North Dakota offices, but cites no further evidence to support that proposition.